IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Case No. 25-cv-03463-NYW

YUNIER SABORIT AGUILAR,

    Petitioner,
v.

KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security,
PAMELA BONDI, in her official capacity as Attorney General of the United States,
TODD LYONS, in his official capacity as Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement,
ROBERT GUADIAN, in his official capacity as Field Office Director of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, and
JUAN BALTAZAR, in his official capacity as Warden of the Aurora Contract Detention Center,

    Respondents.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Verified Petition for a Writ of Habeas Corpus (the "Petition") filed by Petitioner Yunier Saborit Aguilar ("Petitioner" or "Mr. Saborit Aguilar"). [Doc. 1]. This Court ordered Respondents[1] to show cause why the Petition should not be granted. [Doc. 13 at 5]. Respondents have done so, *see* [Doc. 20], and Petitioner has replied, *see* [Doc. 22]. For the reasons set forth below, the Petition is respectfully **GRANTED**.

---

[1] "Respondents" refers to Kristi Noem, the Secretary of the United States Department of Homeland Security; Pamela Bondi, the United States Attorney General; Todd Lyons, the Acting Director of ICE; Robert Guadian, an ICE Field Office Director; and Juan Baltazar, the Warden of the Aurora Contract Detention Center. *See* [Doc. 1 at 1].

## BACKGROUND

Petitioner is a Cuban national who first entered the United States in 2019. [Doc. 1 at 5 ¶ 1]. His application for asylum was denied and he was removed in March 2020. [*Id.*]. When he returned to Cuba, "Cuban counterintelligence detained and tortured him, accusing him of being a spy for the United States government," and for the next two years, he was "repeatedly arrested, detained, jailed, and abused for continuing opposition activities with the Patriotic Union of Cuba." [*Id.*].

Petitioner reentered the United States in February 2022 and immediately expressed fear to border patrol officers. [*Id.* at 5 ¶ 2]. His removal order was reinstated, but he was referred for a reasonable fear interview. [*Id.*]. After establishing a reasonable fear of persecution if he were to return to Cuba, he was referred to withholding-only proceedings pursuant to 8 C.F.R. § 208.2(c)(2)(i). [*Id.*]. He was released from custody in May 2022 on an Order of Supervision, which required regular reporting during the pendency of the withholding-only proceedings. [*Id.* at 6 ¶ 3]. Petitioner fully complied with the requirements of the Order of Supervision. [*Id.*].

On June 16, 2025, Petitioner was arrested outside his home by ICE officers. [*Id.* at 6 ¶ 4]. His Order of Supervision was revoked without notice and without explanation. [*Id.*]. Since then, he has been detained at the Aurora Contract Detention Facility. [*Id.* at 6 ¶¶ 4–5]. On September 18, 2025, an immigration judge granted Petitioner withholding of removal. [*Id.* at 6 ¶ 5]. The Department of Homeland Security ("DHS") waived any appeal, which rendered the withholding order final. [*Id.*]. However, Petitioner has not been released from custody. [*Id.*]. Mr. Saborit Aguilar filed the instant Petition on October 30, 2025, seeking his immediate release from custody. [*Id.* at 19]. He asserts four claims:

2

(1) a procedural due process claim based on the revocation of his Order of Supervision ("Count One"), [*id.* at 14]; (2) a due process claim based on Respondents' failure to follow DHS regulations ("Count Two"), [*id.* at 15]; (3) a substantive due process claim based on his continued detention ("Count Three"), [*id.* at 16]; and (4) a claim under the Administrative Procedure Act ("Count Four"), [*id.* at 17].

## LEGAL STANDARD

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## ANALYSIS

### I. Detention of Noncitizens

Generally, when a noncitizen is ordered removed from the United States, the removal "shall" occur within the next 90 days—the "removal period." 8 U.S.C. § 1231(a)(1); *Morales-Fernandez v. Immigr. & Naturalization Serv.*, 418 F.3d 1116, 1123 (10th Cir. 2005). Detention is mandatory during the removal period, 8 U.S.C. § 1231(a)(2)(A), but once the removal period expires, the noncitizen "*may*" be detained, *id.* § 1231(a)(6) (emphasis added). The Supreme Court has recognized that this permissive language "suggests discretion," but "does not necessarily suggest unlimited

discretion." *Zadvydas*, 533 U.S. at 697. Indeed, "read in light of the Constitution's demands," § 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. In *Zadvydas*, the Court explained that

> [a] statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.

*Id.* at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Finding "nothing in the history of these statutes that clearly demonstrates a congressional intent to authorize indefinite, perhaps permanent, detention," the *Zadvydas* Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The Court did recognize, however, a presumptively reasonable six-month detention period. *Id.* at 701. "After this 6-month period," if the noncitizen demonstrates "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The Supreme Court explained that a six-month presumptive period does not mean that every noncitizen detained for six months must be released; rather, a noncitizen may remain in detention "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* But "if the government fails to demonstrate a significant likelihood of removal in the reasonably foreseeable future, the noncitizen must be released." *Ahrach v. Baltazar*, No. 25-cv-03195-PAB, 2025 WL 3227529, at *2 (D. Colo. Nov. 19, 2025) (citing *Zadvydas*, 533 U.S. at 701).

4

## II. Petitioner's Detention Has Exceeded the Presumptively Reasonable Period

The Court's first task is determining whether Petitioner's detention has exceeded the six-month period that *Zadvydas* recognized as presumptively reasonable. Petitioner represents that he was detained "for approximately two months in 2022" before he was released on the Order of Supervision. [Doc. 1 at 10 ¶ 12; *id.* at 5–6 ¶ 2]. And since his arrest on June 16, 2025, he has been detained just shy of six months. [*Id.* at 6 ¶¶ 4–5].

Mr. Saborit Aguilar contends that his periods of detention should be aggregated, and considering them together, his detention exceeds the six-month period of presumptive reasonableness. [*Id.* at 9]. He argues that "[m]ost courts hold the *Zadvydas* period is cumulative, not reset by re-detention, to prevent indefinite imprisonment through cycles of release and re-arrest," and urges the Court to follow these courts. [*Id.* (collecting cases)]. Respondents describe the applicable landscape as more balanced, asserting that "[w]hile some district courts have considered the six-month *Zadvydas* period to be cumulative, other district courts have held the opposite, including district courts in the Tenth Circuit." [Doc. 20 at 10 (collecting cases)].

Based on the Court's independent research, it appears that district courts more often conclude that a detainee's periods of detention should be considered together in determining whether the detention has exceeded the presumptively reasonable time under *Zadvydas*. *See, e.g.*, *Pena-Gil v. Lyons*, No. 25-cv-03268-PAB-NRN, 2025 WL 3268333, at *2 (D. Colo. Nov. 24, 2025) ("Despite petitioner's 20-month and five-month periods of detention being served nonconsecutively, petitioner has nonetheless been detained longer than the six-month presumptively reasonable period."); *Siguenza v.*

5

*Moniz*, No. 25-cv-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative." (collecting cases)).  The Court agrees with this weight of authority.  "[A] uniform rule that counts and sums prior time in detention is appropriate.  It is, after all, liberty at issue." *Abuelhawa v. Noem*, No. 4:25-cv-04128, 2025 WL 2937692, at *5 (S.D. Tex. Oct. 16, 2025).  Holding otherwise would permit the federal government to "detain noncitizens indefinitely by continuously releasing and re-detaining them."  *Siguenza*, 2025 WL 2734704, at *3.  And as explained above, under *Zadvydas*, expiration of the presumptively reasonable six-month detention period does not mandate a noncitizen's release; detention may continue "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  Expiration of the six-month period simply requires the Government to rebut a petitioner's showing that "there is no significant likelihood of removal in the reasonably foreseeable future," assuming the petitioner makes that showing.  *Id.*

Accordingly, the Court holds that Petitioner's detention, calculated cumulatively at approximately eight months, has exceeded the presumptively reasonable six-month detention period recognized in *Zadvydas*.  Thus, the Court must determine whether Petitioner has met his burden to demonstrate that there is not a significant likelihood that he will be removed in the reasonably foreseeable future.  *Id.*

### III. Petitioner Has Met His Burden

Mr. Saborit Aguilar argues that, due to his final withholding order and DHS's waiver of appeal, he cannot be removed to Cuba.  [Doc. 1 at 11 ¶ 15].  He further contends that he "has no other country of citizenship or nationality," and "Respondents have not

identified any specific third country willing to accept him, nor have they offered any concrete information about negotiations, timelines, or conditions for such transfer." [Doc. 22 at 17–18]. Respondents counter that "Petitioner's withholding of removal to Cuba was only granted approximately two months ago, on September 18, 2025, . . . and it was only at that time that ICE began the process of pursuing Petitioner's removal to an alternative country." [Doc. 20 at 12]. They assert that "[g]iven the recency of ICE's commencement of its search into third country options for Petitioner's removal, Petitioner has not met his burden under *Zadvydas* to show that there is no significant likelihood of his removal in the reasonably foreseeable future." [*Id.*].

As a preliminary matter, the Court finds that Respondents have misstated Petitioner's burden under *Zadvydas*. He is not required to "show that there is no significant likelihood of his removal in the reasonably foreseeable future," as Respondents suggest. See [*id.*]. Rather, Mr. Saborit Aguilar must provide "good reason" to believe that his removal is not significantly likely in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. This distinction is not a matter of semantics, but an important clarification of Petitioner's burden at this stage. See *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 379 (D. Md. 2025) ("[T]o shift the burden of production to the government Mr. Cruz Medina need not *prove* that 'there is no significant likelihood of removal in the reasonably foreseeable future,' but rather must articulate a 'good *reason to believe*' that removal is unlikely in the reasonable foreseeable future."); *Siguenza*, 2025 WL 2734704, at *3 (distinguishing between providing "good reason" to believe that removal is not significantly likely and "establish[ing]" that removal is not significantly likely).

Petitioner's burden may be met by, inter alia, showing "the existence of either

7

institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. 24-cv-00464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024), *report and recommendation adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025).  Courts have found this burden satisfied where, for example, a habeas petitioner shows that some impediment precludes removal to their country of origin.  *See Trejo v. Warden of ERO El Paso E. Montana*, --- F. Supp. 3d ---, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025) (petitioner met his burden by showing he could not be removed to El Salvador, "the only country of which he is a citizen," and the government identified no alternative country for removal); *Roe v. Oddo*, No. 3:25-cv-00128, 2025 WL 3030692, at *7 (W.D. Pa. Oct. 30, 2025) ("Petitioner has carried his burden of proffering good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, . . . due to India's denial of his travel document application." (quotation omitted)); *Momennia v. Bondi*, No. 25-cv-01067-J, 2025 WL 3011896, at *10 (W.D. Okla. Oct. 15, 2025) (finding burden met where the petitioner showed that Iran denied his request for travel documents because he was considered deceased in their systems), *report and recommendation adopted*, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025); *Misirbekov v. Venegas*, No. 1:25-cv-00168, 2025 WL 2450991, at *1 (S.D. Tex. Aug. 15, 2025) ("Petitioner has also provided good reason to believe that there is no significant likelihood of removal in the foreseeable future.  He cannot be removed to Kyrgyzstan without facing political persecution and he does not have citizenship nor any ties to any other country."); *Vaskanyan v. Janecka*, No. 5:25-cv-01475-MRA-AS, 2025 WL 3050081, at *5 (C.D. Cal. July 18, 2025) (burden met where ICE was "unable to remove Petitioner to Russia or Azerbaijan, the countries designated for removal").

In his verified Petition, Mr. Saborit Aguilar states that (1) he was subjected to torture and abuse upon his return to Cuba in 2020, [Doc. 1 at 5 ¶ 1]; and because of his treatment in Cuba, (2) an immigration judge has issued a final order withholding removal, [*id.* at 6 ¶ 5]; such that (3) he cannot lawfully be removed to Cuba, [*id.* at 17 ¶ 36]; *see also* 8 U.S.C. § 1231(b)(3)(A) ("[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.").  Petitioner also asserts in his reply brief that he "has no other country of nationality."  [Doc. 22 at 5].  Moreover, the Court notes that Respondents have not identified any other country that will accept Petitioner or provided *any* information about a potential removal timeline.  See [Doc. 20; Doc. 20-1].[2] And even if ICE were to identify a country that would accept Petitioner, "any efforts to remove [him] to a third country would likely be delayed by proceedings contesting his removal to the third country finally identified."  *Villanueva v. Tate*, --- F. Supp. 3d ---, 2025 WL 2774610, at *10 (S.D. Tex. Sept. 26, 2025).

Because Petitioner has been granted withholding of removal to his only country of citizenship and there are no other countries currently identified that would accept him, Petitioner has shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Zadvydas*, 533 U.S. at 701.  The burden

---

[2] Respondents state that it was only after Petitioner was granted withholding of removal that "ICE began the process of pursuing Petitioner's removal to an alternative country," and assert that, given the "recency of ICE's commencement of its search into third country options for Petitioner's removal, Petitioner has not met his burden under *Zadvydas*." [Doc. 20 at 12].  The Court is unpersuaded by this argument, given the lack of concrete, case-specific information provided by Respondents and because Respondents have provided *no* timing information with respect to removal.  See [*id.*; Doc. 20-1].

therefore shifts to Respondents to present evidence to rebut this showing. *Id.*

## IV.     Respondents Have Not Met Their Burden

Respondents argue that "the Court should find that Respondents' evidence is sufficient to rebut [Petitioner's] showing," directing the Court to a declaration from Egidio Fantauzzi-Perez, an ICE deportation officer. [Doc. 20 at 13; Doc. 20-1]. In that declaration, Mr. Fantauzzi-Perez states only that "ICE began the process of pursuing Petitioner's removal to an alternative country" and that "ICE continues to pursue third country removal options in Petitioner's case." [Doc. 20-1 at ¶¶ 21, 23].[3]

Although Respondents insist that Mr. Fantauzzi-Perez's declaration "shows that Petitioner's removal in the reasonably foreseeable future is significantly likely" and demonstrates that "ICE has been diligently pursuing third country removal options for Petitioner," nothing in the declaration makes that showing. For example, Respondents "do not identify which countries they might contact" to effectuate removal, nor do they list "concrete steps they will take to effectuate [Mr. Saborit Aguilar's] timely removal." *Ahrach*, 2025 WL 3227529, at *5. Nor do Respondents give any sort of expected timeframe for

---

[3] Mr. Fantauzzi-Perez also states that on October 15, 2025, ICE "served Petitioner with a Notice to Alien of File Custody Review" and that this notice "informed Petitioner of the approximate date of the Post Order Custody Review ('POCR') and that Petitioner was able to submit documentation for consideration as part of that review." [Doc. 20-1 at ¶ 22]. Respondents explain in their response brief that a POCR "is a process by which DHS considers whether continued detention is warranted for a noncitizen who has been ordered removed, including whether there is a significant likelihood of the individual's removal in the reasonably foreseeable future." [Doc. 20 at 5]. Neither Respondents' response nor Mr. Fantauzzi-Perez's declaration states the "approximate date" of the POCR that was apparently provided to Petitioner. *See* [*id.*; Doc. 20-1]. Because Respondents failed to provide the Court with this information, the Court can only infer that the "approximate date" of the POCR is not in the reasonably foreseeable future. Moreover, Respondents do not argue that the POCR is a necessary step in effectuating removal or has any impact on whether removal is likely in the reasonably foreseeable future. *See* [Doc. 20].

10

effectuating removal or explain how long it typically takes to identify third country options, coordinate with those countries, or complete removal proceedings.   See [Doc. 20; Doc. 20-1].  And although Respondents note the fact that Mr. Saborit Aguilar was just granted withholding of removal in September 2025, *see* [Doc. 20 at 12–13], they do not explain how this should play into the Court's analysis with respect to their burden, *see* [*id.*].  The Court cannot simply guess that Respondents have not had sufficient time to make adequate progress on removal without any such representation from Respondents.

Respondents' bare assertions that ICE is "pursu[ing] third country removal options" are insufficient to meet Respondents' burden to put forth evidence sufficient to rebut Petitioner's showing.  *See Balouch v. Bondi*, No. 9:25-cv-00216-MJT, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (ruling that "conclusory statements via written declarations that [the government was] taking steps to remove Petitioner to Iran" were insufficient to meet government's burden); *Momennia*, 2025 WL 3011896, at *10  ("[M]ere intent to find a third country is too speculative to permit indefinite detention or to overcome [the petitioner's] showing.").  Indeed, "*Zadvydas* rejected the proposition that continued detention is permissible 'as long as good faith efforts to effectuate . . . deportation continue.'"  *Ahrach*, 2025 WL 3227529, at *4 (quoting *Zadvydas*, 533 U.S. at 702).  "Instead, the government must actually make legitimate progress towards removal."  *Id.* (citing *Hassoun v. Sessions*, No. 18-cv-00586-FPG, 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019)).  Unsubstantiated assertions do not meet this burden.  *Pena-Gil*, 2025 WL 3268333, at *4 (collecting cases).

While the government "has the right to enforce" Petitioner's order of removal, it "may not detain [him] for an indefinite and undetermined period of time while it tries to

effect that removal when the circumstances are such that his removal is not reasonably likely in the foreseeable future." *Villanueva*, 2025 WL 2774610, at *10. For the reasons set forth in this Order, the Court concludes that Respondents' continued detention of Petitioner violates Petitioner's substantive due process rights. The Court will order that Mr. Saborit Aguilar be released from custody pursuant to 28 U.S.C. § 2241(c)(3).[4] *See Salazar-Martinez v. Lyons*, No. 2:25-cv-00961-KG-KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) ("The remedy for a *Zadvydas* claim is generally release of the petitioner under conditions of supervision." (collecting cases)).

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) The Verified Petition for a Writ of Habeas Corpus [Doc. 1] is **GRANTED**;

(2) Respondents **SHALL RELEASE** Mr. Saborit Aguilar **no later than 48 hours after the issuance of this Order**; and

(3) On or before **January 8, 2026**, the Parties shall file a joint status report informing the Court of the status of Mr. Saborit Aguilar's release and whether any additional proceedings in this matter are required.[5]

---

[4] Because the Court is granting Petitioner's Petition and ordering his release on his substantive due process claim (Count Three), the Court need not address Counts One, Two, or Four. *See Pena-Gil*, 2025 WL 3268333, at *4 n.5 (collecting cases).

[5] To the extent Petitioner seeks a Court order "[d]eclar[ing] that Petitioner's arrest and continued detention are unlawful," [Doc. 1 at 18], this request is moot in light of the Court's order to release Petitioner, *Pena-Gil*, 2025 WL 3268333, at *5. To the extent Petitioner requests attorney's fees, [Doc. 1 at 19], this District's Local Rules require those requests to be made by separate motion, *see* D.C.COLO.LCivR 54.3.

DATED:  December 8, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge